UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AEROWEST GMBH, MARTIN EWERS,     :
AEROWEST BETEILIGUNGS GMBH,     :
WOLFGANG KARLSTETTER,     :
XFORM SYSTEMS GMBH, and WERNER   :
EGGERSGLUESS,     :
     :
        Plaintiffs,     :     **COMPLAINT**
     :
     :
   v.     :
     :     Civil Action No. _____
GERHARD FREITAG, STEPHANIE FREITAG :
VIDEO INTERNATIONAL DEVELOPMENT  :
CORPORATION, BERND BRESSEL, and   :
ULRICH WUCHERPFENNIG,     :
     :
        Defendants.     :
------------------------------------------------------------X

Plaintiffs, Aerowest GmbH ("Aerowest"), Martin Ewers ("Ewers"), Aerowest

Beteiligungs GmbH ("Aerowest Parent"), Wolfgang Karlstetter ("Karlstetter"), XForm Systems

GmbH ("XForm"), and Werner Eggersgluess ("Eggersgluess"), by their counsel, Becker, Glynn,

Muffly, Chassin & Hosinski LLP, hereby allege as follows:

<u>Nature and Summary of this RICO Action</u>

1.     Defendant Gerhard Freitag and his co-defendants have engaged in a

coordinated, persistent, and on-going illegal scheme to extract assets (cash and stock) worth

hundreds of millions of dollars from the plaintiffs, their former business partners, through a

series of fraudulent scams.  Gerhard Freitag, a Florida resident, is the mastermind behind the

overall scheme.

2.     The defendants have a long shared commercial (and personal) history with

each of the plaintiffs.  But in each case those relationships soured and were ultimately

terminated.

3.      Deprived of any commercial relationship with the plaintiffs, the defendants sought to defraud the plaintiffs out of their material assets.

4.      The defendants perpetrate their scheme by fabricating commercial transactions.  Each fabricated transaction has similar characteristics.  The defendants invent a transaction in which one or more of the plaintiffs promises to provide cash or stock to the defendants.  The defendants forge documents to support the sham and demand that the targeted plaintiff honor the fake transactions.  The defendants commence legal proceedings predicated upon the fabricated transactions if and when the plaintiff rejects the demands.

5.      The defendants are primarily based in the United States and make extensive use of the United States mails and wires to perpetrate their fraudulent scheme.

6.      The plaintiffs have incurred substantial monetary damages and continue to be harmed by the defendants' on-going scheme.  Plaintiffs seek treble damages under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961, *et seq*.) to compensate them for the harm caused by the defendants' racketeering activity and an injunction prohibiting the defendants from continuing to engage in their illegal acts.

<u>Parties, Jurisdiction, and Venue</u>

7.      Aerowest is a corporation formed under the laws of the Federal Republic of Germany with its principal place of business in Germany.  Aerowest owns and operates a fleet of private jets.

8.      Ewers, a German resident, is a minority shareholder and the managing director of Aerowest.

9.      Aerowest Parent is a corporation formed under the laws of Germany with its principal place of business in Germany.  It has been the majority shareholder of Aerowest

since 2008.

10. Karlstetter, a German resident, is a minority shareholder of Aerowest.

11. XForm is a corporation formed under the laws of Germany with its principal place of business in Germany. XForm is a former business partner of Video International Development Corporation ("VIDC").

12. Eggersgluess, a German resident, is a shareholder and officer of XForm. He also is a former employee of VIDC's German affiliate.

13. Gerhard Freitag, upon information and belief, is a former shareholder of VIDC, a current representative of VIDC, and a resident of Florida. Freitag also was, until 1998, a pilot for Aerowest.

14. Stephanie Freitag, upon information and belief, is a Florida resident and the wife of Gerhard Freitag.

15. VIDC, upon information and belief, is a corporation incorporated under the laws of the State of New York with its principal offices in Locust Valley, New York.

16. Bernd Bressel ("Bressel"), upon information and belief, is the owner of VIDC, a resident of New York, and the stepson of Gerhard Freitag.

17. Ulrich Wucherpfennig ("Wucherpfennig"), upon information and belief, is a resident of Germany and a longtime friend of Gerhard Freitag. He also is a former business partner of Aerowest and a former pilot for Aerowest.

18. This Court has personal jurisdiction over the defendants pursuant to both 18 U.S.C. § 1965 and conspiracy jurisdiction. Two of the defendants reside in New York, one of their fraudulent legal claims is pending in a New York court, and important elements of the defendants' scheme are directed out of New York. Upon information and belief, the scheme

-3-

requires the non-resident defendants to frequently communicate with and instruct the New York defendants by email and telephone.

19.     Venue is proper in this Court either (i) pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the plaintiffs' claims occurred in this judicial district, or (ii) pursuant to 28 U.S.C. § 1391(b)(3), because this Court has personal jurisdiction over all the defendants.

## FACTS RELATED TO ALL CLAIMS AND ALL DEFENDANTS

### The Basic Scheme

20.     This is the basic scheme:  the defendants manufacture a fake transaction pursuant to which one (or more) of the plaintiffs purportedly promises material assets to the defendants.  The defendants forge documents to substantiate the sham and commence legal action against the targeted plaintiff on the basis of the sham if and when the plaintiff refuses their demands.  The defendants submit fake testimony to the courts in support of their fake claims.

21.     The defendants' scheme has common participants.  Gerhard Freitag is the mastermind behind the scheme.  His co-conspirators are his close relatives and friends and an entity that they control:  Stephanie Freitag (his wife), Bressel (his stepson and business associate), VIDC (a company controlled by Bressel), and Wucherpfennig (Freitag's longtime friend).

22.     The scheme also has common victims:  Gerhard Freitag and his co-conspirators are former business partners of each of the plaintiffs.  Wucherpfennig and Gerhard Freitag are former Aerowest pilots and Wucherpfennig is a former business partner of Aerowest (Wucherpfennig exploits his status as a former Aerowest pilot by pretending that he represented Aerowest in the fabricated transactions).  Gerhard Freitag, Bernd Bressel, and VIDC are former

business partners of Eggersgluess and his company, XForm.  Aerowest Parent, Ewers, and Karlstetter are the shareholders of Aerowest.

23.    Each of the plaintiffs has been victimized, repeatedly and insistently by the defendants.

24.    To date the defendants, as part of their overall scheme to defraud, have fabricated as many as five transactions and initiated three lawsuits against the plaintiffs.

25.    <u>First</u>, beginning in 2005, all of the defendants conspired to defraud Aerowest out of approximately $300,000 on the basis of two sham commissions on genuine airplane sales by Aerowest (the "Fraudulent Commissions").  Gerhard Freitag and his co-conspirators supported the faked transactions with forged documents and caused VIDC to file a lawsuit against Aerowest in 2013 seeking payment on one of the two sham transactions. Wucherpfennig and Gerhard Freitag gave false testimony in support of the sham.

26.    <u>Second</u>, in 2014, Gerhard Freitag and his co-conspirators fabricated a transaction through which Freitag purportedly purchased Aerowest in 2000 for 50,000 Deutsche Marks (the "Aerowest Stock Fraud").  Freitag insisted that he owned Aerowest on the basis of the fabrication and commenced a lawsuit seeking to enforce his claim of ownership when Aerowests's three shareholders refused to comply with the defendants' demands.

27.    <u>Third</u>, in late 2014, Gerhard Freitag, his wife (Stephanie Freitag), Bressel, VIDC and Wucherpfennig conspired to defraud Eggersgluess out of €250,000.  The defendants invented an oral contract dating from 2006 in which Eggersgluess purportedly promised to pay €100,000 to Ms. Freitag and €150,000 to VIDC.  Both debts were supposedly incurred in exchange for intangible assets VIDC provided to Eggersgluess's company, XForm.  Ms. Freitag and her co-conspirators supported the fraud with a fabricated promissory note from

Eggersgluess.  She filed a lawsuit against Eggersgluess seeking payment when Eggersgluess refused her demand and gave false testimony in support of the claim.  Ms. Freitag's claim against Eggersgluess for €100,000 is the "Eggersgluess Fraud."

28.     Fourth, in 2014 VIDC, Bressel, Gerhard Freitag, Stephanie Freitag and Wucherpfennig conspired to assert a fake debt of XForm to VIDC in the amount of €150,000 as a defense to a claim XForm brought against VIDC and Bressel in New York State court. (XForm's state court claim seeks damages against VIDC and Bressel arising out of fraudulent activity by VIDC, Bressel and Gerhard Freitag that dates as far back as 2009.  This older activity also constitutes predicate acts of racketeering activity, as we discuss below.)  VIDC and Bressel asserted the fake XForm debt as an offset defense in a verified answer to XForm's complaint. This fabrication is a corollary to (and is coordinated with) Stephanie Freitag's attempt to defraud Eggersgluess.  VIDC's assertion of the fake XForm debt as a defense is the "New York XForm Fraud."

29.     The fabricated transactions, fake documents, and false testimony required extensive coordination among the defendants and were designed to defraud the plaintiffs of their assets.

30.     Upon information and belief, all of the defendants have agreed to share in any fruits of their fraud.

Phase One – the Fraudulent Commissions

31.     The Fraudulent Commissions scheme was a plan by all defendants to defraud Aerowest out of approximately $300,000 by fabricating two commissions due to VIDC on actual airplane sales by Aerowest.  The Freitags from Florida, Bressel and VIDC from New York, and Wucherpfennig from Germany orchestrated the scheme.

*The First Fake Commission*

32.    The scheme begins in July 2005.  Commencing at that time and continuing for a period of months, Wucherpfennig looted approximately $150,000 in cash out of Aerowest in six separate installments.  Each time he transferred the money to the Freitags on behalf of VIDC; the Freitags, upon information and belief, transferred a portion of the ill-gotten funds back to Wucherpfennig.  Neither Wucherpfennig, the Freitags, nor VIDC had any legitimate claim to the money.  They simply stole it.

33.    Wucherpfennig, upon information and belief, delivered the cash to the Freitags and VIDC by sending wire transfers from Aerowest's bank in Germany to the Freitags' bank in Florida.  Upon further information and belief, the Freitags and VIDC returned a portion of the cash to Wuchperfennig by sending wire transfers from their bank in Florida to Wuchperfennig's bank in Germany.

34.    The six transfers from Wucherpfennig to the Freitags and VIDC (and the transfers back from the Freitags and VIDC to Wucherpfennig) constitute a series of related transactions with the common intent of looting $150,000 from Aerowest.

35.    Wucherpfennig, the Freitags, and VIDC conspired to conceal the looting by pretending that the payments were made on account of a commission that Aerowest supposedly owed to VIDC arising out of the sale by Aerowest of an aircraft in September 2005.

36.    VIDC submitted a bill to Aerowest for $150,000 purporting to represent Aerowest's debt to VIDC for the commission.  That bill was dated November 30, 2005 – well after the payments began.  Gerhard Freitag created the bill.

37.    The commission and Gerhard Freitag's bill both were fabricated. Aerowest had no debt to VIDC.  All six of the transfers to the Freitags and VIDC represent

Aerowest funds stolen by Wucherpfennig, the Freitags, and VIDC.

38.     Wucherpfennig, the Freitags, and VIDC all knew that the Aerowest funds that Wuchperfennig transferred to the Freitags and VIDC were stolen from Aerowest. Wucherpfennig, the Freitags, and VIDC engaged in the charade in which Wucherpfennig made transfers to the Freitags, and the Freitags transferred a portion back to Wucherpfennig, with the knowledge and intent of supporting the false claim for a commission and concealing the fact that the funds had been stolen and shared among Wucherpfennig, the Freitags, and VIDC.

39.     Unaware that the commission was a fraud, Aerowest claimed the payments as deductible business expenses on its taxes.  The German taxing authority examined the payments.  It determined that the details were suspicious and rejected the deductions as unjustified.

40.     Wucherpfennig and the Freitags conspired together to develop and carry out the scheme to defraud Aerowest out of $150,000.  They did so, upon information and belief, by communicating by email and telephone about the details of the faked transaction.  Upon information and belief, the Freitags were in Florida for these communications.  Upon further information and belief, Gerhard Freitag (from Florida) sent the forged bill to Wucherpfennig (in Germany) by use of the U.S. mails and electronic mail.

41.     The Freitags, Wucherpfennig, and VIDC knew that the bill for the commission was a fake and that Aerowest did not owe any amount to VIDC when they submitted the bill to Aerowest.  They submitted the bill to Aerowest with the intent that Aerowest rely upon the false bill and believe that the payments made to the Freitags and VIDC were legitimate.

*The Second Fake Commission*

42.     Having succeeded in funneling $150,000 out of Aerowest, Gerhard Freitag and Wucherpfennig faked another commission.

43.     The second faked commission relates to an actual sale by Aerowest of a Cessna Citation 560 aircraft to Atlas Air Service GmbH ("Atlas") in 2001.  Atlas in turn sold the aircraft to a third party in the United States.

44.     In 2013, more than a decade after the sale, the defendants asserted for the first time that Aerowest and VIDC had entered into an oral agreement in 2001, pursuant to which Aerowest promised to pay VIDC a $150,000 commission for the sale.

45.     The defendants also produced, for the first time, a written "deferment" agreement, purportedly entered into by Aerowest and VIDC.  The date on that agreement is December 1, 2001.  Defendant Wucherpfennig claims to have signed the agreement on behalf of Aerowest (recall that Wucherpfennig was a former pilot for the company) and Bressel on behalf of VIDC.

46.     The deferment agreement conveniently provides that Aerowest's payment of the commission to VIDC is deferred indefinitely, until demand is made by VIDC.

47.     The deferment agreement is forged and the commission agreement is fabricated.

48.     Upon information and belief, Bressel and Wucherpfennig jointly prepared the forged deferment agreement, exchanging drafts of the document by email.  Upon further information and belief, Bressel worked on the forged document in New York; he received the forged document by email in New York, signed his name to it in New York, and sent it by email to Wucherpfennig from New York.

49.     Upon information and belief, Gerhard Freitag participated in the creation of the sham commission agreement and the forged deferment agreement from his home in Florida.  Upon further information and belief, he did so by communicating with Bressel and Wucherpfennig about those agreements through the use of the U.S. mails, phone, and email.

50.     On the basis of the faked deferment agreement, Bressel, on behalf of VIDC, made a demand for payment of the commission by a letter he says he sent to Aerowest dated January 15, 2013.  The demand contains material misrepresentations.  It pretends to "terminate" the deferment agreement, thereby triggering Aerowest's purported obligation to pay the commission.

51.     VIDC (through Bressel), on information and belief, issued the purported demand letter by use of the U.S. mails from New York.

52.     Bressel and the other defendants knew there was no commission or deferment agreement when they caused VIDC to demand payment from Aerowest.  The demand was made with the intent that Aerowest rely upon the false claims and pay the commission.

53.     Aerowest did not pay the demanded commission.

54.     VIDC commenced an action in Germany seeking payment on the commission on or about August 1, 2013.

55.     The defendants submitted the forged deferment agreement as a centerpiece of their lawsuit.

56.     They also provided false testimony to the German court on March 25, 2014.  Gerhard Freitag and Wucherpfennig each testified that Wucherpfennig, on behalf of Aerowest, promised Freitag that Aerowest would pay the $150,000 commission to VIDC.

57.     On information and belief, Gerhard Freitag (from Florida) and

Wucherpfennig (from Germany) coordinated their false testimony in advance through the use of the telephone and electronic mail.

58.     The German trial court saw through the fraud.  In a decision dated April 22, 2014, the court rejected the defendants' contentions and dismissed VIDC's claim for the commission as "groundless."  After listening to the testimony of Wucherpfennig and Freitag, the court ruled that any commission was "impossible to explain" in light of the evidence presented. Atlas, as the intermediary seller, engaged in all of the brokering activities necessary to complete the sale, leaving nothing for VIDC purportedly to do that would justify a commission.  Nor did Aerowest need any introduction to Atlas or to the ultimate buyer because the relationships among Aerowest, Atlas, and the other buyer were well established at the time of the sale.  The court also suggested that the testimony of Wucherpfennig and Freitag was staged, finding that Wucherpfennig's testimony sounded "as if it had been previously agreed" upon with Freitag. VIDC also failed to submit the original of the deferment agreement despite repeated requests that it do so.  The reason was obvious, of course – the forged agreement would not withstand forensic analysis.

59.     VIDC appealed to an intermediate appellate court in Germany.

60.     The defendants in their appeal developed yet more fraudulent testimony in an attempt to convince the appellate court to reverse the trial court's ruling.

61.     Wucherpfennig, after coordinating with Gerhard Freitag, Bressel, and VIDC, testified to the appellate court that:  (i) Freitag alerted him to the U.S. buyer for Aerowest's aircraft; (ii) Aerowest understood that the U.S. buyer was the ultimate purchaser of the aircraft, and Atlas was brought in as an intermediary to handle certain financial arrangements; (iii) Wucherpfennig prepared the deferment agreement in late 2001 with the help

of an attorney, signed it, and delivered it to Freitag; and (iv) Freitag arranged for the execution of the agreement by Bressel in late 2001.

62.     This testimony was false.

63.     The sham succeeded.  The appellate court, relying upon the fraudulent testimony of Wucherpfennig, reversed the trial court and ruled – improperly – that the commission agreement and deferment agreement were valid.  The appellate court granted a judgment to VIDC for the commission plus interest.  That judgment was procured by the defendants' fraud.

64.     Aerowest has appealed the appellate court ruling.  That appeal remains pending.

65.     Upon information and belief, Bressel from New York and Freitag from Florida direct VIDC's German action.  Upon further information and belief, they do so by communicating with each other, the other defendants, and VIDC's German counsel, through the use of the telephone, U.S. mails, and electronic mail.  Upon information and belief, Bressel makes those communications from New York; Freitag makes those communications from Florida.

66.     Wucherpfennig, upon information and belief, funds the Fraudulent Commissions scheme and pays all of the legal fees incurred by VIDC in the proceedings in Germany.  Upon further information and belief, Wucherpfennig routinely coordinates with the Freitags, Bressel and VIDC over the strategy and tactics for the on-going scheme.  That coordination is conducted through the use of the telephone and electronic mail.  Upon information and belief, Bressel and VIDC are present in New York during those communications.  Upon information and belief, the Freitags are present in Florida during those

-12-

communications.

67.     The cash looted by Wucherpfennig and the Freitags on account of the first faked commission constitutes damage to Aerowest arising out of the Fraudulent Commissions scheme.  Aerowest will be further damaged if it must pay another commission to VIDC (plus interest) on account of the second stage of the Fraudulent Commissions scheme.

68.     Aerowest also has incurred substantial legal fees defending against the Fraudulent Commissions scheme and will continue to do so until the defendants are stopped. The fees Aerowest has incurred constitute yet further harm the defendants have caused Aerowest by reason of their fraud.

<u>Phase Two – the Aerowest Stock Fraud</u>

69.     While the claim for the second of the two Fraudulent Commissions was pending in the German courts, the defendants embarked upon another phase of their scheme: they fabricated a claim that Gerhard Freitag owns all of the capital stock of Aerowest.

70.     On information and belief, Gerhard Freitag communicated with Wucherpfennig and the other defendants in 2014 to develop the details of the Aerowest Stock Fraud.  Upon further information and belief, Gerhard Freitag did so from Florida by use of the telephone, electronic mail, and the U.S. mails.

71.     Aerowest is now owned by Aerowest Parent, Ewers, and Karlstetter.  But Ewers was the sole owner of Aerowest in 1997.  At that time he entered into a written agreement with Gerhard Freitag, pursuant to which Gerhard Freitag obtained the option to purchase all of the Aerowest capital stock for 50,000 Deutsche Marks.

72.     Gerhard Freitag never exercised the option, which is now expired.

73.     Aerowest had limited value in 1997.  Following Aerowest Parent's

takeover in 2008, significant amounts of money have been invested in Aerowest.  The company is now worth many millions as a direct result of Aerowest Parent's investment.

74.     Likely due at least in part to the exponential increase in the value of Aerowest since the takeover, the defendants conspired in 2014 to obtain Aerowest by means of fraud.

75.     The defendants initiated their fraud with a demand letter to Ewers, dated November 26, 2014, from Gerhard Freitag's counsel.

76.     The letter asserted that Gerhard Freitag owned all of Aerowest.  It demanded that Aerowest acknowledge his ownership and revise the company's shareholder record accordingly.  Affidavits from Gerhard Freitag and Wucherpfennig were attached to the letter.

77.     Both affidavits claim that Freitag exercised his option by paying the 50,000 Deutsche Marks to Wucherpfennig, on behalf of Ewers, in 2000.  The affidavits say that Freitag made the payment by bringing a suitcase filled with cash to Wucherpfennig's office.

78.     Upon information and belief, Freitag instructed his lawyer to issue the demand letter from Florida by use of the phone and electronic mail.  On further information and belief, Freitag and Wuchperfennig coordinated the preparation of their affidavits by exchanging communications by phone and electronic mail.  Freitag, upon information and belief, was in Florida during these communications.

79.     But both affidavits contain materially false statements, as did the demand letter, because Freitag never exercised his option and does not own Aerowest.  It defies belief that Freitag became the owner of Aerowest in 2000 but never once took any steps to act on that ownership for thirteen years – including when Aerowest Parent acquired the majority stake in

Aerowest from Ewers in 2008. Nor did Freitag bother to mention his so-called ownership of Aerowest when he testified (falsely) in the German court in support of VIDC's claim for the second of the two Fraudulent Commissions.

80.     Wucherpfennig's affidavit is even more farfetched. At the time Ewers sold Aerowest in 2008, Aerowest principally leased the planes it operated. Wucherpfennig owned the company from which Aerowest leased those planes. When Ewers sold Aerowest in 2008, Wucherpfennig sold his company to the same buyer. Wucherpfennig and Ewers each gave a customary representation that Ewers was the sole owner of Aerowest. Wucherpfennig also promised to make the buyer whole should that representation prove false and cause damage to the buyer. It is incredible that Wucherpfennig would have given his representation and made that promise if Gerhard Freitag – and not Ewers – was the sole owner of Aerowest in 2008.

81.     Freitag and Wucherpfennig both knew that the two affidavits and the demand letter contained materially false statements.

82.     The affidavits and the demand letter were made with the intent that Aerowest's shareholders rely upon them and acknowledge Freitag as the owner of all of the capital stock of Aerowest.

83.     Aerowest and its three shareholders (Aerowest Parent, Ewers, and Karlstetter) refused to acknowledge that Freitag was the owner of Aerowest or make any changes to the record of shareholders.

84.     Freitag commenced an action in Germany against Ewers, Aerowest Parent, and Karlstetter to obtain ownership over Aerowest. The lawsuit is predicated on the fabricated claim that Freitag exercised his option to purchase Aerowest by delivering a suitcase filled with cash to Wucherpfennig.

-15-

85.     Upon information and belief, at the direction of Freitag and Wucherpfennig, Freitag's counsel submitted their false affidavits to the German court in support of the defendants' false claim.

86.     The German court, in denying a request by Freitag for an interim injunction directing the German stock registrar to declare him the sole owner of Aerowest, found that there was "substantial doubt" about the "correctness" of the affidavits.  It even went so far as to call the circumstances of Wucherpfennig's affidavit "completely absurd," given the promise he made in 2008 that Ewers owned all of Aerowest.

87.     Upon information and belief, Gerhard Freitag directs his German legal action to obtain the capital stock of Aerowest from Florida.  Upon further information and belief, he does so by communicating from Florida with his German counsel and the other defendants through the use of the telephone, U.S. postal service, overnight mail, and electronic mail.

88.     Wucherpfennig, upon information and belief, funds the Aerowest Stock Fraud and pays the legal fees incurred by Gerhard Freitag in the proceedings in Germany.  Wucherpfennig necessarily coordinates with Freitag over the strategy and tactics for the on-going scheme.  Upon information and belief, that coordination is conducted by telephone and electronic mail; Gerhard Freitag is present in Florida during those communications.

89.     Aerowest, Ewers, Aerowest Parent, and Karlstetter have incurred substantial legal fees defending against the Aerowest Stock Fraud and will continue to do so until the defendants' racketeering activities cease.  The fees Aerowest, Aerowest Parent, Ewers, and Karlstetter have incurred constitute harm the defendants have caused by reason of their scheme.

Phase Three – the Eggersgluess Fraud

90.     At about the time the defendants developed the Aerowest Stock Fraud, the defendants embarked upon another phase of their racketeering scheme:  the Eggersgluess Fraud.

91.     XForm and its owner, Eggersgluess, were longtime business partners of VIDC.  Eggersgluess was a former employee of VIDC's German affiliate until he established XForm in 2006.  XForm manufactures sophisticated audio-visual systems.  VIDC was the exclusive U.S. distributor of XForm's systems from 2006 to 2014.  Eggersgluess and XForm terminated the relationship in 2014 when they discovered that VIDC, Gerhard Freitag and Bressel had been selling XForm's systems since as early as 2009 without XForm's knowledge or consent and retaining the ill-gotten proceeds.  The proceeds from the defendants' fraudulent scheme to convert XForm's systems exceed €100,000.

92.     Gerhard Freitag, Bressel, and VIDC hid their improper sales by falsely representing to XForm that VIDC retained possession of XForm's systems but that the equipment had been misplaced in VIDC's warehouse or was otherwise inaccessible.  VIDC and Bressel made these statements to prevent XForm from learning the truth that VIDC had sold the systems.

93.     By way of example only, Bressel repeatedly told Eggersgluess that he would "check" on the status of certain systems that XForm had entrusted to VIDC's care. Bressel made these statements during telephone calls from New York to Eggersgluess in Germany on or about December 2, 2010, January 4, 2011, March 24, 2011, January 27, 2012, and April 27, 2012.  These statements were intentionally false and misleading because Bressel knew when he made them that he already had sold XForm's missing systems.  There was nothing to "check."

94.     By way of an additional example, Bressel wrote to XForm by email on February 21, 2014, that snow prevented Bressel from accessing the VIDC warehouse to locate and return the systems.  This statement was intentionally false.

95.     Upon information and belief, Gerhard Freitag (from Florida) and Bressel and VIDC (from New York) made their false communications to XForm by use of the telephone and electronic mail.  The false statements were material and the defendants knew it when they made those statements.  Gerhard Freitag, Bressel, and VIDC made their false statements with the intent of deceiving XForm and Eggersgluess into believing that VIDC retained possession of XForm's property.

96.     The Eggersgluess Fraud was set in motion in late 2014, after XForm and Eggersgluess terminated their commercial relationship with VIDC.  XForm and Eggersgluess severed their ties to the defendants when they uncovered the truth that VIDC and Bressel had been secretly selling XForm property.

97.     True to form, the defendants in response conspired to develop a forged document and a fraudulent scheme to extract money from Eggersgluess.  Stephanie Freitag, by letter from her German counsel dated October 22, 2014, demanded that Eggersgluess pay her €100,000.  The letter contended that Eggersgluess had signed a promissory note for that amount on February 9, 2006, nearly nine years before she made her demand for payment.  The letter did not otherwise explain the basis for the purported debt.

98.     The note was forged and the demand for payment fabricated.  Both were materially false.

99.     Upon information and belief, defendants Gerhard and Stephanie Freitag conspired with VIDC, Bressel, and Wucherpfennig to forge the note in Florida.  Upon further

-18-

information and belief, the Freitags prepared and delivered the note to their German counsel by use of the U.S. mail and electronic mail.  Upon further information and belief, the Freitags (from Florida) also communicated with their German counsel by phone and electronic mail in connection with preparation of the fraudulent demand letter.

100.     Stephanie Freitag and the other defendants knew the note was forged when she directed her counsel to deliver the note and demand letter to Eggersgluess.  Stephanie Freitag, in coordination with Gerhard Freitag, Wucherpfennig, and the other defendants, faked the note with the intent that Eggersgluess rely upon the forged note and make a payment of €100,000 to Stephanie Freitag.

101.     Eggersgluess refused to pay.

102.     Undeterred, the defendants, in keeping with their practice, commenced a lawsuit against their target:  Stephanie Freitag initiated proceedings in a German court seeking €100,000 against Eggersgluess on the basis of the sham note.

103.      Stephanie Freitag gave the following testimony in the German proceeding in support of her fraudulent claim:  (i) Eggersgluess promised to pay €250,000 in 2006 in exchange for certain intangible assets received from VIDC; (ii) €150,000 of that amount was allocated as owed to VIDC and €100,000 was allocated as owed to Stephanie Freitag; (iii) Eggersgluess and Gerhard Freitag negotiated the terms of the transaction; and (iv) the note was genuine and had been executed by Eggersgluess as evidence of his debt to her.

104.     This testimony was false.  Neither XForm nor Eggersgluess has any debt to any of the defendants.

105.     Upon information and belief, Stephanie and Gerhard Freitag jointly direct her action from Florida.  Upon further information and belief, they do so by communicating from

Florida with her German counsel (and the other defendants) through the use of the telephone, U.S. postal service, overnight mail, and electronic mail.

106.    Wucherpfennig, upon information and belief, funds the Eggersgluess Fraud and pays all of the legal fees incurred by Stephanie Freitag in connection with her lawsuit against Eggersgluess.  Upon further information and belief, Wucherpfennig, in his capacity as the funder of the scheme, routinely coordinates with Stephanie and Gerhard Freitag over the strategy and tactics for the on-going scheme.  Upon further information and belief, that coordination is conducted through the use of the telephone and electronic mail; the Freitags are present in Florida during those communications.

107.    Eggersgluess has incurred substantial legal fees defending against the defendants' fraudulent claims and will continue to do so until the defendants' racketeering activities cease.  The fees Eggersgluess has incurred constitute harm the defendants have caused by reason of their scheme.  XForm also has been harmed by VIDC's improper sale of its property, which VIDC, Gerhard Freitag, and Bressel carried out through the fraudulent use of the U.S. wires.

<u>Phase Four – the New York XForm Fraud</u>

108.    Finally, and in keeping with the scheme's pattern and practice, VIDC and Bressel conspired with the Freitags and Wucherpfennig to defraud XForm through a legal proceeding in New York concerning the fake transaction employed by Stephanie Freitag.

109.    XForm commenced an action against VIDC and Bressel in the New York State Supreme Court (Nassau County) asserting breach of contract, quasi-contract, and fraud arising out of VIDC's secret sale of XForm's systems.  That action remains pending.

110.    VIDC submitted a verified answer to the complaint.  Bressel signed the

verification.

111.    VIDC and Bressel asserted as their first defense that any debt of VIDC to XForm is offset by a debt in the amount €150,000 owed by XForm to VIDC.

112.    This purported debt, upon information and belief, is the same €150,000 Stephanie Freitag asserts Eggersglues promised to pay VIDC back in 2006.  Only in the New York proceeding it is now XForm that made that promise.

113.    VIDC's defense, and Bressel's verification to the answer, contain materially false representations because the supposed promise by XForm to pay €150,000 to VIDC is fake.  XForm has no debt to VIDC.

114.    Indeed, the parties' conduct is incompatible with the newly-minted claim. VIDC routinely incurred ordinary trade debt to XForm in the course of their business activities from 2006 through 2014.  But not once during that eight-year period did VIDC assert that money it owed to XForm should be offset against XForm's purported debt to VIDC.

115.    Bressel and VIDC knew the defense was false at the time that they asserted it.

116.    Bressel and VIDC asserted the defense with the intent of defeating XForm's claim against them by means of fraud.

117.    VIDC and Bressel conspired to develop the defense with the Freitags and Wucherpfennig.  They did so in coordination with Stephanie Freitag's claim against Eggersgluess in Germany.

118.    Upon information and belief, VIDC and Bressel direct the litigation from New York, together with the Freitags from Florida.  Upon further information and belief, they do so by communicating with their counsel and the other defendants through the use of the

telephone, U.S. postal service, overnight mail, and electronic mail.

119. On information and belief, VIDC and Bressel communicated their fraudulent defense to their New York counsel by the use of the telephone and electronic mail.

120. The attorney for VIDC and Bressel filed the answer, including the fraudulent defense, with the State court via the Internet. VIDC and Bressel, upon information and belief, instructed their attorney to make that filing and knew their fraudulent defense would be submitted over the wires.

121. Wucherpfennig, upon information and belief, funds the New York XForm Fraud and pays the legal fees incurred by VIDC and Bressel. Upon further information and belief, Wucherpfennig, routinely coordinates with Bressel and VIDC over the strategy and tactics for the on-going scheme. Upon further information and belief, that coordination is conducted through the use of the telephone and electronic mail; Bressel and VIDC are present in New York during those communications.

122. XForm has and will continue to incur legal fees to prove the defense is fraudulent. The fees that XForm has incurred (and will incur) constitute harm the defendants have caused by reason of their fraudulent schemes.

<u>First Cause of Action</u>
(Violation of 18 U.S.C. § 1962(c) Against All Defendants)

123. The plaintiffs reallege and incorporate by reference paragraphs 1 through 122.

124. Each of the defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

125. The defendants collectively constitute and participate in an association in fact enterprise with the common purpose of defrauding the plaintiffs out of material assets.

126.    The defendants carry out their scheme by fabricating commercial transactions, forging documents to substantiate those transactions, and asserting false legal claims – supported by more fabricated testimony and false documents – to obtain judgments in favor of the plaintiffs.  The defendants' scheme also includes their fraudulent conversion of Aerowest and XForm property.

127.    Each of the defendants, through the association in fact, has engaged in two or more acts of mail fraud, pursuant to 18 U.S.C. § 1341, directed against the plaintiffs.

128.    Each of the defendants, through the association in fact, has engaged in two or more acts of wire fraud, pursuant to 18 U.S.C. § 1343, directed against the plaintiffs.

129.    Wucherpfennig, Gerhard Freitag, Stephanie Freitag, and VIDC, through the association in fact, have each engaged in two or more acts of money laundering, pursuant to 18 U.S.C. §§ 1956 and 1957, directed against the plaintiffs.

130.    The defendants' acts of mail fraud, wire fraud, and money laundering constitute predicate acts under the RICO Act.

131.    The defendants' acts of mail fraud, wire fraud, and money laundering constitute a continuous and related pattern of racketeering activity.  Over a period of years, and continuing to this day, the defendants have repeatedly engaged in indictable acts of mail fraud, wire fraud, and money laundering, and thereby continually engaged in racketeering activity within the meaning of 18 U.S.C. § 1961(1).

132.    Those acts of mail fraud, wire fraud, and money laundering involve distinct and independent criminal acts.  The acts were neither isolated nor sporadic events, but involve regular and repeated violations of law to accomplish the defendants' desired ends in the course of the business of the association in fact enterprise.  These acts were related to each other

by virtue of (a) common participants – Gerhard and Stephanie Freitag, Bressel, Wucherpfennig, and VIDC, (b) common victims – their former business partners and associates, including Aerowest, Aerowest Parent, Ewers, Karlstetter, Eggersgluess, and XForm, (c) common methods of commission – fabricating transactions, forging transaction documents, combining those fabrications with a demand for payment, commencing litigation to compel payment on the sham transactions, submitting false testimony, and use of the U.S. mails and wires to further their scheme, and (d) the common purpose of defrauding their former business partners and associates.

133.    The defendants' racketeering activity, conducted through the association in fact enterprise, affects interstate and foreign commerce.

134.    The defendants' racketeering activity is in violation of 18 U.S.C. § 1962(c).

135.    The defendants' racketeering activity proximately caused harm to each of the plaintiffs.

Second Cause of Action<br>(Violation of 18 U.S.C. § 1962(d) Against All Defendants)

136.    The plaintiffs reallege and incorporate by reference paragraphs 1 through 135.

137.    The defendants knowingly and willfully conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

138.    The defendants knew they were engaged in a conspiracy to commit the predicate acts. They also knew that the predicate acts were part of a pattern of racketeering activity. And they knew that participation and agreement among themselves to commit the predicate acts, as an association in fact enterprise, was necessary to carry out their pattern of

racketeering activity.

139.    The defendants all knowingly agreed to conduct or participate directly in the conduct, management, or operation of the enterprise's scheme to fraudulently obtain money from the plaintiffs.

140.    The defendants' violation of 18 U.S.C. § 1962(d) proximately caused harm to the plaintiffs.

## JURY DEMAND

The plaintiffs hereby demand a trial by jury for all matters related to the plaintiffs' claims.

*****

WHEREFORE, plaintiffs seek:

(a)     monetary damages against all defendants, jointly and severally, in an amount to be determined at trial, plus interest;

(b)     trebling of the monetary damages pursuant to 18 U.S.C. § 1964(c);

(b)     injunctive relief against all defendants, pursuant to 18 U.S.C. § 1964(a), restraining the defendants from engaging in any further racketeering activity against the plaintiffs, including but not limited to the Fraudulent Commissions, the Aerowest Stock Fraud, the Eggersgluess Fraud, and the New York XForm Fraud; and

(c)     attorneys' fees, costs, disbursements, and such other and further relief as this Court may deem just, proper, and equitable.

Dated: New York, New York
       May 19, 2015

BECKER, GLYNN, MUFFLY, CHASSIN
& HOSINSKI LLP
Attorneys for Plaintiffs

By: _____
       Richard N. Chassin
       A Member of the Firm
299 Park Avenue
New York, New York  10171
Tel: (212) 888-3033